*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *BRANDON CHURCH,* | ) |
| *o/b/o his minor child,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )　　　　*No. 1:15-cv-34-JHR* |
| | ) |
| *CAROLYN W. COLVIN,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

*MEMORANDUM DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably determined that the plaintiff's child was not disabled. The plaintiff seeks remand on the basis that the administrative law judge erred in not finding that his child's impairments functionally equaled the criteria of any impairment included in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 10) at 2-10. I find no error and, accordingly, affirm the commissioner's decision.

The sequential evaluation process generally followed by the commissioner in making SSI disability determinations, *see* 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), is modified when, as here, the claimant is a child, 20 C.F.R.

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 14.

§ 416.924.  In accordance with that section, the administrative law judge found, in relevant part, that the child, who was born on March 25, 2009, suffered from severe impairments of cystic fibrosis and speech language disorder, Findings 1, 3, Record at 20; that he did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment included in the Listings, Finding 4, *id.*; that he did not have an impairment or combination of impairments that functionally equaled the criteria of any impairment included in the Listings, Finding 5, *id.* at 21; and that he, therefore, had not been disabled, as that term is defined in the Social Security Act, since June 21, 2011, the date that the application was filed, Finding 6, *id.* at 32.  The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

When a claim for SSI benefits is made on behalf of a child, the commissioner must first determine whether the alleged impairment is severe.  20 C.F.R. § 416.924(a) & (c).  If the impairment is found to be severe, as was the case here, the question then becomes whether the impairment is one that is listed in, or medically or functionally equals, the Listings.  *Id.* § 416.924(a).  If the impairment, or combination of impairments, does not meet or equal this standard, the child is not disabled.  *Id.* § 416.924(d)(2).

2

An impairment or combination of impairments is medically equal in severity to a listed impairment when the medical findings are at least equal in severity and duration to the listed findings; medical equivalence must be based on medical findings. *Id*. § 416.926(a) & (b). An impairment or combination of impairments is functionally equivalent to a listed impairment when it results in marked limitations in two of six domains of functioning or an extreme limitation in one domain, based on all of the evidence in the record. *Id*. § 416.926a(a) & (b). The six domains are (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being. *Id*. § 416.926a(b)(1).

A "marked" limitation occurs when an impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(2). An "extreme" limitation exists when an impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(3). No single piece of information taken in isolation can establish whether a particular limitation is marked or extreme. *Id*. § 416.926a(e)(4).

In this case, the administrative law judge found that the plaintiff's child had less than a marked limitation in acquiring and using information, less than a marked limitation in attending and completing tasks, less than a marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, less than a marked limitation in the ability to care for himself, and a marked limitation in health and physical well-being. *See* Record at 26-32.

## I.  Discussion

The plaintiff contends that the administrative law judge erred in failing to find that his child had marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and an extreme limitation in the domain of health and physical well-being.  *See* Statement of Errors at 2-3.  For the reasons that follow, I conclude that her findings are supported by substantial evidence.

### A.  First Three Domains

The plaintiff points to the following evidence in support of his argument that the administrative law judge erred in finding less than a marked impairment in the first three of the six domains – acquiring and using information, attending and completing tasks, and interacting and relating with others:

1.      Ann R. Wilbanks, M.D., a treating pediatrician at the Cystic Fibrosis Clinic at Eastern Maine Medical Center ("EMMC"), stated in an October 3, 2012, letter to the plaintiff's counsel that the child had speech and developmental delays, further compounding his cystic fibrosis.  *See* Statement of Errors at 7; Record at 523.

2.      Assistance Plus, which devised a treatment plan for the child dated October 16, 2012, summarized his unmet needs as (i) difficulty identifying and managing feelings, (ii) difficulty with transition, (iii) difficulty with boundaries, (iv) lacking relationships, (v) needing to improve coping skills, and (vi) being impulsive, and described his problems as (i) engaging in physical and verbal aggression when told no or given a consequence, (ii) struggling to manage his emotions safely and effectively, and (iii) struggling with appropriate peer interactions.  *See* Statement of Errors at 7-8; Record at 591-94.

4

3.      The child underwent a comprehensive developmental assessment at the EMMC Developmental Evaluation Clinic on March 9, 2011, *see* Record at 384, during which he was observed to stomp his foot in frustration on several occasions and "seem[ed] to become fixed on certain activities and had a difficult time at occasionally transitioning away from these activities[,]" Statement of Errors at 8 (quoting Record at 389).

4.      As part of the March 9, 2011, evaluation, Joanna G. Dotts, D.O., stated that the child "would benefit from [the] initiation of developmental services to include speech and language 2 times per week with a minimum of 1 time per week to address both receptive and expressive language delays[,]" that "a physical therapy reevaluation [was] recommended at 6 months[,]" and that "Child Development Services were offered to the family." *Id*. (quoting Record at 382).

5.      The EMMC Developmental Evaluation Clinic team summarized its March 9, 2011, findings as follows:

> [The child] is a 23-month 14-day-old young man who presented to the Developmental Evaluation Clinic for further assessment of medical and developmental needs.  Audiology testing completed as part of this assessment found tympanograms within normal range bilaterally and incomplete hearing assessment, but responses to speech and music were noted.  Gross motor skills fall in the Low-Average range with a Standard Score of 87 obtained (a Standard Score falling between 85 and 115 equals average performance).  Communication skills fall well below age level with inconsistencies noted.  Expressive language skills fell significantly below age level with a Standard Score below or less than 55 obtained, and auditory comprehension/receptive language skills also fell below age level with a Standard Score of 65 obtained.  Review of medical records and discussion with his caregivers reveal an at-risk family medical history for learning, mental health, and medical challenges, and as mentioned previously, [the child] has a history of a diagnosis of cystic fibrosis.  Physical examination completed today found a young man with proportional growth parameters with an open-mouth posture, bilateral tibial torsion, and staring episodes noted.  Based on the findings of this evaluation team, [the child's] presentation is consistent with the diagnoses **Cystic Fibrosis; Bilateral Tibial Torsion; and a Speech and Language Delay, Mixed**.

*Id*. at 9 (quoting Record at 376).

The plaintiff argues that "[t]hese well documented ongoing issues establish that the [child's] limitations would interfere seriously with his ability to independently initiate sustained or complete activities[,]" as well as corroborating his limitations in "managing his emotions safely and effectively[,]" as "demonstrated by the documented physical and verbal aggression." *Id*.  He adds that this evidence "confirms that [the child's] day to day functioning is seriously limited, not only by his requirements for treatment (nebulizer, vest treatments, and medications), but also the cumulative effects that he has with respect to the other three domains (Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others) are marked[.]"  *Id*.  As a result, he argues, the administrative law judge's findings that the child's limitations in those three domains are less than marked are unsupported by substantial evidence. *See id*. at 9-10.

### 1.   Acquiring and Using Information

This domain deals with how well a child acquires or learns information and how well he or she uses the information that he or she has learned.  *See* 20 C.F.R. § 416.926a(g).

An older infant or toddler (age 1 to the attainment of age 3) is expected to learn about the world around him or her, and should form concepts and solve simple problems through purposeful experimentation (*e.g*., taking toys apart), imitation, constructive play (*e.g*., building with blocks), and pretend play activities.  *See id*. § 416.926a(g)(2)(ii).  The child should begin to respond to increasingly complex instructions and questions and to produce an increasing number of words and grammatically correct simple sentences and questions.  *See id*.

A preschool child (age 3 to the attainment of age 6) should begin to learn and use the skills that will help him or her to read, write, and do arithmetic when he or she is older.  *See id*.

§ 416.926a(g)(2)(iii).  Such "readiness skills" include listening to stories, rhyming words, and matching letters; counting, sorting shapes, and building with blocks; painting, coloring, copying shapes, and using scissors; and using words to ask questions, give answers, follow directions, describe things, explain what the child means, and tell stories.  *Id*.

Depending on a child's age and developmental stage, examples of limited functioning in this domain, although not necessarily marked or extreme limitations, include failure to "demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night[,]" inability to "rhyme words or the sounds in words[,]" "difficulty recalling important things [the child] learned in school yesterday[,]" "difficulty solving mathematics questions or computing arithmetic answers[,]" and "talk[ing] only in short, simple sentences and hav[ing] difficulty explaining what [the child] mean[s]."  *Id*. § 416.926a(g)(3).

The administrative law judge concluded:

> The [child] has less than marked limitation in acquiring and using information.  Dr. Hymoff [impartial psychological expert Ira H. Hymoff, Ph.D.] testified that it is difficult to assess this domain as [the child] is not yet in school; but that there were no indications from the record of any severe issues in this area.  [The child] has learned how to perform age-appropriate tasks, such as dressing and undressing, brushing his teeth and knowing when to take his medication.  He can draw and copy shapes, sing songs from memory, tell stories and form sentences with four or more words.  He is behind in terms of potty-training, but there are no indications of any global learning difficulties and there are no cognitive deficits described in the Assistance Plus assessments.

Record at 27.

As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 11) at 5, Dr. Hymoff specifically testified that the evidence of record did not establish a marked limitation in this domain, *see* Record at 55.  The plaintiff points to no expert opinion to the contrary.  On this basis, alone, he falls short of demonstrating that the administrative law judge's finding was unsupported by substantial evidence.

7

Moreover, as the commissioner observes, *see* Opposition at 5-6, relevant regulations state that, if a child has not attained age 3, the commissioner "will generally find that [he or she has] a 'marked' limitation if [he or she is] functioning at a level that is more than one-half but not more than two-thirds of [his or her] chronological age when there are no standard scores from standardized tests in [his or her] case record[,]" and, if a child is any age, the commissioner "will find that [he or she has] a 'marked' limitation when [he or she has] a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive test designed to measure ability or functioning in that domain, and [his or her] day-to-day functioning in domain-related activities is consistent with that score[,]" 20 C.F.R. §§ 416.926a(e)(2)(ii)-(iii).  As the commissioner argues, *see* Opposition at 6, the plaintiff does not advance evidence that the child's functioning in this domain met either standard.

The plaintiff points, in relevant part, to Dr. Wilbanks' October 2012 letter, Dr. Dotts' March 2011 evaluation, and the March 2011 summary by the EMMC Developmental Evaluation Clinic team.  *See* Statement of Errors at 7-9.  Yet, as the commissioner persuasively argues, *see* Opposition at 6, the first two records do not clarify the extent of the child's limitations in this domain.  While Dr. Wilbanks stated that the child had "significant speech and developmental delays[,]" she added that one would need to contact his primary care provider for more information.  Record at 523.  Dr. Dotts merely recommended that the child receive speech and language services.  *See id*. at 382.

The March 2011 team report does state that the child's communication skills fell "well below age level" as indicated by a standard score below 55, "significantly below age level[,]" on expressive language skills, and a standard score of 65, "below age level[,]" on auditory comprehension/receptive language skills.  *Id*. at 376.  However, as the commissioner argues, *see*

Opposition at 6-7, a test score, standing alone, does not establish a marked limitation, *see* 20 C.F.R. § 416.926a(e)(4)(i)-(ii).  The commissioner must "consider [a child's] test scores together with the other information [she has] about [his or her] functioning[.]"  *Id.* § 416.926a(e)(4)(ii).

The administrative law judge did so, observing that, as of October 2011, the child's speech showed improvement, and by April 2013, his speech was "fully intelligible[,]" he asked questions, he had better than four-word sentences, and he could sing songs from memory.  Record at 24-25; *see also id.* at 270, 730.  In addition, as the commissioner notes, *see* Opposition at 7, the domain of acquiring and using information pertains not only to communication ability but also to a wide range of abilities, *see, e.g.*, 20 C.F.R. 416.926a(g)(2)(ii)-(iii).

Despite the evidence to which the plaintiff points, the administrative law judge's conclusion that the child had less than a marked limitation in the domain of acquiring and using information is supported by substantial evidence, including her analysis of his relevant functional abilities over the time period at issue and the opinion of Dr. Hymoff.

## 2.  Attending and Completing Tasks

This domain deals with how well a child is able to focus and maintain attention and how well he or she begins, carries through, and finishes activities, including the pace at which he or she performs activities and the ease with which he or she changes them.  *See* 20 C.F.R. § 416.926a(h).

An older infant or toddler is expected to be able to attend to things that interest him or her, have adequate attention to complete some tasks by him or herself, and demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on his or her clothes.  *See id.* § 416.926a(h)(2)(ii).

A preschool child should be able to pay attention when he or she is spoken to directly, sustain attention to his or her play and learning activities, and concentrate on activities such as

putting puzzles together and completing art projects. *See id.* § 416.926a(h)(2)(iii). A preschool child should also be able to focus long enough to do many more things by him or herself, such as getting his or her clothes together and dressing him or herself, feeding him or herself, or putting away his or her toys. *See id.* A child that age should usually be able to wait his or her turn and change his or her activity when a caregiver or teacher says it is time to do something else. *See id.*

Depending on a child's age and developmental stage, examples of limited functioning in this domain, although not necessarily marked or extreme limitations, include being "easily startled, distracted, or overreactive to sounds, sights, movements, or touch[,]" being "slow to focus on, or fail[ing] to complete, activities of interest[,]" "repeatedly becom[ing] sidetracked from [his or her] activities or . . . frequently interrupt[ing] others[,]" becoming "easily frustrated and giv[ing] up on tasks," and "requir[ing] extra supervision to keep . . . engaged in an activity." *Id.* § 416.926a(h)(3).

The administrative law judge concluded:

> The [child] has less than marked limitation in attending and completing tasks. Similar to acquiring and using information, there is little in the current record to indicate any significant issues in this functional domain. [The child's] mother does not report any real concerns in this regard and until he enters school and undergoes formal evaluation, there is little in the current record to establish significant deficits in this area.

Record at 28.

As the commissioner argues, *see* Opposition at 8-9, this finding, as well, is supported by substantial evidence. As the administrative law judge noted, *see* Record at 23, Dr. Hymoff testified that, overall, the record did not indicate a marked degree of limitation in any domain except for health and physical well-being, *see id.* at 55-57. She also "accorded evidentiary weight" to the opinions of the agency nonexamining consultants. *See id.* at 32. Dr. Allen found, as of August 5, 2011, that the child had no limitation in attending and completing tasks, *see id.* at 64-65, and Dr.

Houston found, as of October 27, 2011, that he had less than a marked limitation in that domain, *see id.* at 81-82.

The commissioner correctly observes that, to the extent that the plaintiff argues that the need for cystic fibrosis treatment interferes with the child's ability to attend and complete tasks, such difficulties bear on the domain of health and physical well-being, not that of attending and completing tasks, which concerns a child's mental ability to concentrate and complete tasks. *See* Opposition at 8-9; 20 C.F.R. §§ 416.926a(h)(1)(i)-(ii), 416.926a(l)(4)(iii).

As the commissioner argues, *see* Opposition at 9, the plaintiff's citation to the March 2011 report that the child was observed to stomp his foot in frustration and to have difficulty transitioning away from activities does not call into question the commissioner's finding as to this domain. The plaintiff fails to explain how this demonstrates a *marked* limitation in the ability to attend and complete tasks. In any event, this evidence was noted by Dr. Allen, *see* Record at 63, and presumably was available to both Drs. Houston and Hymoff.

### 3.  Interacting and Relating with Others

This domain is concerned with how well a child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. *See* 20 C.F.R. § 416.926a(i).

An older infant or toddler is expected to be able to express emotions and respond to the feelings of others, begin initiating and maintaining interactions with adults but also show interest in, and eventually interact with, other children his or her age, and spontaneously communicate his or her wishes or needs, first by using gestures and eventually by speaking words clearly enough

that people who know him or her can understand what he or she says most of the time.  *See id*. § 416.926a(i)(2)(ii).

A preschool child should be able to socialize with children as well as adults, begin to prefer playmates his or her own age and start to develop friendships with them, be able to use words instead of actions to express him or herself, be better able to share, show affection, and offer to help, be able to relate to caregivers with increasing independence, choose his or her own friends, and play cooperatively with other children, one at a time or in a group, without continual supervision.  *See id*. § 416.926a(i)(2)(iii).  A child this age should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speak clearly enough to be understood by both familiar and unfamiliar listeners most of the time.  *See id*.

Depending on a child's age and developmental stage, examples of limited functioning in this domain, although not necessarily marked or extreme limitations, include "not reach[ing] out to be picked up and held by [the child's] caregiver[,]" having "no close friends," or friends that are all older or younger than the child, "avoid[ing] or withdraw[ing] from people [the child] know[s]," or being "overly anxious or fearful of meeting new people or trying new experiences[,]" "hav[ing] difficulty playing games or sports with rules[,]" "hav[ing] difficulty communicating with others; e.g., in using verbal and nonverbal skills to express [him or herself], carrying on a conversation, or in asking others for assistance[,]" and "hav[ing] difficulty speaking intelligibly or with adequate fluency."  *Id*. § 416.926a(i)(3).

The administrative law judge concluded:

The [child] has less than marked limitation in interacting and relating with others. [The child's] mother describes recent issues with [the child] banging his head when frustrated, hitting her or his peers when upset and having difficulty coping with his feelings.  The record references this only briefly, but none of [the child's] evaluators have expressed any significant concerns in terms of behavioral issues.  In fact, he

12

is often described as happy, playful, pleasant, cooperative and talkative. He plays cooperatively, tells stories imaginatively and plays well with his cousins.

Record at 29.

The commissioner persuasively argues that this finding, as well, is supported by substantial evidence. *See* Opposition at 10. As she notes, *see id*., Dr. Hymoff testified that, although there might be "some early development behavioral problems[,]" the child's impairment in this domain was less than marked, Record at 56. Drs. Allen and Houston agreed that, while the child could be oppositional, his impairment in this domain was less than marked. *See id*. at 64, 81. The 2011 and 2012 evidence to which the plaintiff points does not undermine the administrative law judge's finding, both because she pointed to contrary evidence of the child's social capabilities and because that evidence presumably was available to Dr. Hymoff, and the 2011 evidence presumably was available to Drs. Allen and Houston.

### B. Domain of Health and Physical Well-Being

This domain is concerned with the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning, to the extent not considered in conjunction with the domain of moving about and manipulating objects. *See* 20 C.F.R. § 416.926a(l).

A physical or mental disorder may have physical effects that make it difficult for a child to perform activities independently or effectively. *See id*. § 416.926a(l)(1). The child may experience such problems as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain. *See id*. In addition, a child's medications or treatment might have physical effects that limit his or her performance of activities. *See id*. § 416.926a(l)(2). As a result of a child's illness, whether chronic with stable symptoms or

13

episodic with periods of worsening and improvement, and/or his or her medications or treatment, he or she may experience physical effects that interfere with functioning in any or all of his or her activities.  *See id*. § 416.926a(l)(3).

Depending on a child's age and developmental stage, examples of limited functioning in this domain, although not necessarily marked or extreme limitations, include having "generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of [the child's] impairment(s)[,]" "somatic complaints" such as "seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia[,]" "limitations in [the child's] physical functioning because of [his or her] treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments)[,]" "exacerbations from one impairment or a combination of impairments that interfere with [the child's] physical functioning[,]" or medical fragility, such that the child "need[s] intensive medical care to maintain [his or her] level of health and physical well-being."  *Id*. § 416.926a(l)(4).

The administrative law judge concluded:

> The [child] has marked limitation in health and physical well-being.  [The child] has a very serious illness.  Cystic fibrosis is a progressive, incurable disease, which will require regular monitoring and maintenance throughout his life.  However, all records to date indicate that he is very stable and even improved, in this regard.  He has caught up in terms of his weight and is eating and sleeping well.  There are no other medical or health concerns described in the current record.  The record raises concerns about the level of care [the child] has received in the home environment.  His parents are strongly encouraged to comply with all treatment recommendations in order to address [his] medical, emotional and other needs in a complete and comprehensive manner.

Record at 31-32.

The plaintiff contends that the administrative law judge erred in failing to find the child's impairment in this domain extreme, citing:

1.      Dr. Wilbanks' October 2012 letter, in which she described cystic fibrosis as "a genetically based metabolic disease affecting many organ systems in the body" and "a life-shortening and incurable disease" and noted that the child as of that time required inhaled albuterol nebulization treatments three times a day and inhaled antibiotic nebulization treatments twice a day "in a 28 day on / 28 day off cycling[,]"[2] needed chest physical therapy by way of a vest for 30 minutes twice daily, had twice been hospitalized for pulmonary exacerbations, receiving intravenous antibiotics and oxygen therapy, in July 2010 and July 2012, and had three additional pulmonary exacerbations requiring oral antibiotics in the past year.  Statement of Errors at 4 (quoting Record at 523).  Dr. Wilbanks further noted that the child was "pancreatic insufficient," meaning that he needed replacement pancreatic enzymes with every meal and snack in order to adequately absorb ingested calories, needed supplements of four fat-soluble vitamins daily, took an H-2 blocker twice daily to optimize the effect of the pancreatic enzymes, took additional vitamin D-3 daily to reduce his risk of osteoporosis, and took acidophilus daily to replace normal intestinal flora destroyed by frequent use of antibiotics.  *Id.*  She noted that, while weight gain was a struggle during the child's first 18 months of life, his body mass index had been above the 50th percentile since then and was, as of the date of the letter, at the 74th percentile.  *See id.*

2.      The child's mother's testimony at hearing that there were three to four nebulizer treatments daily, lasting 15 minutes each, and that she had learned through Assistance Plus that

---

[2] By this, I presume that Dr. Wilbanks meant to indicate that nebulization treatments were administered in a cycle of albuterol nebulization treatments three times a day for 28 days, followed by antibiotic nebulization treatments two times a day for 28 days, whereupon the pattern repeated.  However, even if she meant to indicate that the child required each of those nebulization treatments every day (a total of five per day), that would not be outcome-determinative.

when she recognizes that the child is having difficulties breathing, she must use the nebulizer or vest above and beyond the normal number of applications.  *See id.* at 5; Record at 52-53.

        3.      Dr. Hymoff's testimony, in response to the plaintiff's counsel's question as to whether the child's impairment in this domain was beyond marked, to extreme:

> Yeah, see my dilemma is that is more medical than psychological.  You know so it sounds from description yes, I would say probably he absolutely needs adult supervisor or caretaker supervision to function there's no question about that, but I'm not sure the psychological as much as the physical.

Statement of Errors at 5-6 (quoting Record at 58).

        At oral argument, the plaintiff's counsel repeatedly stated that, based on the totality of the evidence, no reasonable person could conclude that the child's impairment in this domain was less than extreme, given his need for time-consuming treatments, constant adult monitoring, and additional treatments as warranted.

        Nonetheless, as counsel for the commissioner rejoined, the administrative law judge characterized her findings as to all six domains as consistent with Dr. Hymoff's testimony.  *See* Record at 32.  Dr. Hymoff initially testified, when asked about the domain of health and physical well-being, "[H]e's got some very serious physical problems and is solely dependent on the care that is provided for him so maybe that one is mark[ed,] but that would be more medically than psychologically."  *Id*. at 57.  When then asked by the plaintiff's counsel whether he would "even consider that even more than mark[ed] to almost to the extreme level just because of the routine that [the child] has to go through on a daily basis[,]," Dr. Hymoff gave the testimony on which the plaintiff relies.  *Id*. at 57-58.  Yet, as counsel for the commissioner argued, his testimony on cross-examination is equivocal.  He stated, "[P]robably [the child] absolutely needs adult supervisor or caretaker supervision to function[,] there's no question about that[.]"  *Id*. at 58.  Yet, he never testified that the child's impairment in this domain was extreme.  *See id*.  Nor did he testify as to

the impact on the child's daily activities.  *See id*.  He noted, again, that his "dilemma" was that this was "more medical than psychological."  *Id*.

While the administrative law judge, in summarizing Dr. Hymoff's testimony, noted that *he* had indicated that the child did "have a very serious physical problem" but that it fell outside of his "area of specialization[,]" she did not state that *she* rejected his testimony on the basis of his lack of specialization.  *Id*. at 23.  She supportably construed his testimony, on the whole, as standing for the proposition that the child's impairment in this domain was marked rather than extreme.

Beyond this, she did not rely solely on the Hymoff testimony.  As the commissioner notes, *see* Opposition at 11, the administrative law judge gave some weight to the opinions of agency nonexamining consultants, *see* Record at 32.  In 2011 opinions, Richard T. Chamberlin, M.D., an internal medicine specialist, and Anthony Pileggi, M.D., a pediatric specialist, both rated the child's impairment in this domain as less than marked.  *See id*. at 65, 81-82.[3]

In addition, as the commissioner's counsel emphasized at oral argument, in summarizing the evidence of record prior to analyzing the level of the child's impairment in the six domains, the administrative law judge discussed the child's functioning in detail.  She stated, for example, that, (i) as of March 2011, the child enjoyed listening to music and could sing songs from memory,

---

[3] At oral argument, I asked the plaintiff's counsel whether the Chamberlin and Pileggi opinions constituted substantial evidence in support of the finding of a marked impairment in this domain.  The plaintiff's counsel responded that they did not because neither had the benefit of review of material, subsequently-submitted evidence, including the Wilbanks letter, and neither appreciated the depth of treatment the child received on a daily basis.  The commissioner's counsel rejoined that the plaintiff had waived any challenge to the administrative law judge's partial reliance on the Chamberlin and Pileggi opinions by failing to make that argument in his statement of errors.  *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).  Even if the argument was not waived, it is unavailing.  The finding of a marked, rather than extreme, impairment is supported by substantial evidence even in the absence of the Chamberlin and Pileggi opinions.

point at pictures in books, self-feed with his fingers and a spoon, perform some dressing and undressing, and brush his teeth, *see id.* at 23-24, (ii) Cystic Fibrosis Clinic notes for the period from September 4, 2012, through February 2013 reflected that his cystic fibrosis was stable, "he was active and playful and gaining weight; he had had no exacerbations, emergency room visits or clinic walk-ins; and his mother expressed no new concerns[,]" *id.* at 25, and (iii) notes from Waterville Pediatrics dated April 4, 2013, indicated that, apart from the fact that the child was not yet potty-trained, his development was within normal limits, and "he could walk, skip and climb stairs[,]" "could copy shapes, button clothes and catch a ball[,]" and "could play cooperatively, tell imaginative stories and sing songs[.]" *id.*

As counsel for the commissioner argued, this approach was consistent with the dictate that an adjudicator consider the totality of the evidence, given that no single piece of information taken in isolation can establish whether a particular limitation is marked or extreme. *See* 20 C.F.R. § 416.926a(e)(4).

The commissioner contends that, to the extent that the plaintiff relies on the Wilbanks letter and the child's mother's testimony, his argument is unavailing because he merely marshals evidence without attempting to explain how it necessarily directs a finding of an "extreme" rather than a "marked" impairment. *See* Opposition at 12-13. While I do not minimize the seriousness of the child's illness or the burden on him and his family of his need for daily treatments, I agree that the plaintiff fails to make a persuasive argument that, on this record, a reasonable person could only have concluded that the child's impairment in this domain was extreme rather than marked, that is, interfered *very seriously*, rather than *seriously*, with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.924a(e)(2)-(3).

As the commissioner points out, *see* Opposition at 12-13, an impairment in the domain of health and physical well-being may be considered *marked* if a child is "frequently ill because of [his or her] impairment(s) or [has] frequent exacerbations of [his or her] impairment(s) that result in significant, documented symptoms or signs[,]" 20 C.F.R. § 416.926a(e)(2)(iv). The regulation elaborates:

> For purposes of this domain, "frequent["] means that [the child has] episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. [The commissioner] may also find that [the child has] a "marked" limitation if [he or she has] episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

*Id.*[4]

As noted above, the plaintiff points to evidence from Dr. Wilbanks and the child's mother that the child needs regular nebulizer treatments three to four times daily for 15 minutes each and regular vest treatments twice daily for 30 minutes each, requires additional nebulizer and/or vest treatments if he is having difficulty breathing, must ingest a number of oral medications and vitamins daily, was hospitalized twice, in July 2010 and July 2012, for pulmonary exacerbations, and in the year prior to October 2012, had three additional pulmonary exacerbations requiring the administration of oral antibiotics. Yet, neither Dr. Wilbanks nor the child's mother, in the cited portion of her testimony, addresses the impact of the child's treatments on his functioning in any or all of his activities. The plaintiff does not explain, and it is not self-evident, how this evidence

---

[4] An impairment in this domain may be considered "extreme" if the child is "frequently ill because of [his or her] impairment(s) or [has] frequent exacerbations of [his or her] impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation[.]" 20 C.F.R. § 416.926a(e)(3)(iv).

compels a finding of greater than a marked limitation in the domain of health and physical well-being.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 29th day of September, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
